EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RAMONA COLÓN RIVERA, acusada y apelante.

*Número:* CR-65-331     *Resuelto:* 23 de enero de 1967

*José Rafael Gelpí* y *José A. Bravo Abréu,* abogados de la apelante; *J. F. Rodríguez Rivera, Procurador General Interino,* y *Peter Ortiz, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

La apelante fue convicta por un jurado de un delito de abuso de confianza y condenada a sufrir una sentencia suspendida de 2 a 7 años de presidio. Consistió dicho delito, según la acusación, en que siendo la apelante una empleada de la firma Joyería Santurce, Inc., propiedad del Sr. J. Tormes y como tal depositaria de dineros pertenecientes a dicha firma, durante el período comprendido entre el 17 de marzo de 1959 y el 17 de marzo de 1962, "con la intención de defraudar como defraudó a la antes referida corporación y a

J. Tormes, ilegal, voluntaria y maliciosamente, se apropió de la cantidad de $3,717.19, en moneda legal del cuño de los E.U. de América, que fuera recibida en su capacidad y depositaria de esos dineros de la corporación antes referida y cuya cantidad de dinero venía obligada a depositar en las cuentas de la Joyería Santurce, Inc., apropiándose de dichas sumas de dinero sin el consentimiento ni la autorización de Joyería Santurce, Inc. o Julio Tormes".

Como primer error se alega que el Tribunal Superior dejó a la apelante en estado de indefensión permitiendo que la Joyería Santurce, Inc., "burlara sus derechos al ocultar documentos absolutamente necesarios para la defensa y la presentación de los cuales se había solicitado oportunamente".

El Tribunal sentenciador, concediendo a la acusada un derecho de descubrimiento de prueba más amplio que el que autorizan las Reglas de Procedimiento Criminal, dictó una orden con anterioridad a la celebración del juicio para que el Sr. Tormes, dueño de la Joyería Santurce, Inc., pusiera a la disposición de la defensa todos los libros y otros documentos de los negocios realizados por la referida firma durante el período de tres años cubierto por la acusación. Decimos esto porque ni la Regla 95 de Procedimiento Criminal ni ninguna otra, autoriza al Tribunal para dictar una orden como la que dictó en este caso. Conforme a la citada Regla 95, previa moción del acusado el Tribunal "podrá ordenar al fiscal que produzca para ser inspeccionados, copiados o fotografiados por el acusado o su abogado, determinados objetos, libros, documentos o papeles que no fueren declaraciones juradas, con excepción de la propia declaración del acusado, que el Pueblo hubiese obtenido del acusado o de otras personas mediante orden judicial o de otro modo y que pudieren ser necesarios para la preparación de la defensa del acusado, independientemente de que el Pueblo se propusiere ofrecerlos en evidencia o de que los mismos fueren admisibles en evidencia".

En este caso los libros y otros documentos cuyo examen interesaba la acusada no habían sido obtenidos por el Pueblo de dicha acusada ni de otras personas pues no estaban en poder del Fiscal y sí de la dueña de los mismos, la Joyería Santurce, Inc. El derecho de la acusada al descubrimiento de prueba antes del juicio lo limita la Regla 95, a aquella evidencia señalada en la propia regla y que hubiese sido obtenida por el Pueblo del acusado o de otras personas en la forma allí dispuesta.

De todos modos, en cumplimiento de la citada orden del tribunal, el Sr. Tormes puso a disposición de la defensa los documentos que ésta había solicitado examinar pero la defensa no los utilizó por la falta de un contable. Sobre este incidente el juez de instancia se expresó así:

"Hon. Juez: Primero hay dos situaciones a ser resueltas. Primero solicita se elimine la declaración de la Srta. Juanita Folch y del Sr. Julio C. Tormes. Para ello se alega, se aduce, que no se ha establecido 'corpus delicti', por tanto, deben ser eliminadas todas las declaraciones de estos dos testigos. La contención es que la Defensa no quedó en estado de continuar porque no se produjeron ayer o durante esta semana ciertos documentos que según la Defensa, pudieron servir de base para ellos continuar o establecer su Defensa, su repregunta adecuada. En cuanto a la Corte, pido se haga constar la prueba no contradice, fue en el sentido los boletos de venta o abono, [sic] a que se refieren la Defensa estuvieron a disposición de ellos. No contradice porque el testimonio de la Srta. Folch y el Sr. Tormes es en el sentido de que los documentos estuvieron a la disposición de la Defensa y que una vez dichos documentos fueron puestos a disposición de la Defensa y ésta no pudo utilizar los mismos por falta de Contable, fueron restituídos y él, en la operación de su negocio, entendió no era necesario guardarlos más y se deshiciese de ellos. No hubo, a pesar del tiempo transcurrido, ninguna solicitud de la Defensa para que los documentos se mantuvieran bajo la custodia y jurisdicción del Tribunal, de manera que nadie, ni el Sr. Tormes, pudiera disponer de ellos, de modo que pudieran ser utilizados por la Defensa cuando el caso llegara a Corte. Si hubo lapsus de la Defensa, no es atribuíble en forma alguna al

Estado. No puede concluirse de una actuación que ellos creyeran que era la más apropiada." (Informe Procurador General, págs. 3, 4.)

■ Por otra parte, según apunta el Procurador General, el Tribunal accedió a todas las solicitudes de la defensa para la producción de documentos y dictó las órdenes correspondientes. Si los documentos no estaban disponibles por haber sido destruidos o por cualquiera otra razón, es lo cierto que la defensa, a pesar de que tuvo amplia oportunidad para ello, no hizo las diligencias pertinentes para asegurar el uso oportuno de los mencionados documentos. El error no fue cometido.

En el segundo error se impugna la actuación del Tribunal Superior al ordenar que pasara al jurado una declaración de la acusada, redactada en forma de carta.

Se trata de una carta escrita por la acusada al Sr. Tormes en la cual se compromete a reembolsarle todo el dinero que faltaba.(1) Contra la objeción de la defensa el tribunal ordenó que dicha carta pasara al jurado cuando éste se retiró a deliberar.

---

(1) El texto de la carta es el siguiente:

"Don Julio:

Cuando ud. me llamó, yo pasé a la Joyería pero estaba cerrada.

Yo había hablado con Juanita, y le expliqué que todo el dinero que usted encuentre que falte, yo se lo reembolsaré, le juro que usted no perderá ni un solo centavo de eso.

Yo le dije a ella que sumara todo lo que fuera y me lo hiciera saber, que se le va a responder por todo.

Yo no quiero que vaya a hablar con mi padre porque no quiero que vaya a pasar un mal rato.

A fin de este mes, mi esposo va a recibir un dinero de una devolución del pronto de una casa, y yo le voy a pedir parte de ese dinero, y se lo voy a enviar.

Si queda alguna diferencia se la mandaré aunque sea en pagos *semanales*.

Yo se lo aseguro que tendrá todo el dinero no importa la cantidad que sea.

Le agradeceré comprenda lo que quiero decirle.

Gracias
*Monin*"

■ No hay duda de que dicha carta contiene manifestaciones incriminatorias y al igual que si se tratara de una confesión no debió el jurado llevarla consigo al retirarse a deliberar. Sin embargo, ello no conlleva la revocación de la sentencia, dadas las circunstancias que concurrieron en este caso y en ausencia de demostración de que la actuación del Tribunal fuera perjudicial a la acusada. *Pueblo* v. *Martínez Díaz*, 90 D.P.R. 467 (1964).

El contenido de la carta había llegado al jurado por las manifestaciones hechas por la acusada a dos testigos de cargo. Juana María Folch declaró:

"R. Ella inicia la conversación, me presenta la nota con el encargo le dijera el Jefe continuara investigando, que estaba dispuesta a cubrir cualquier deficiencia habida. Yo le sugerí que lo hiciera ella misma, la investigación, que ella misma comprobara al Jefe en que consistía la deficiencia. La conversación no fue extensa. Simplemente dijo se tenía que ir porque estaba nerviosa y que volvería el sábado por la mañana." (T.E., Pieza I, págs. 103–104.)

". . . . . . . ."

"P. Ese día 26 que Vd. dice fue lunes como a las 7:30 A.M. que le llama, ¿qué le dice?

"R. Me informó no había podido ir porque su médico . . ., que le dijera al Jefe no volvía, que siguiera buscando y revisando cuentas, que respondería de cualquier cantidad que apareciera en la deficiencia." (T.E., Pieza I, pág. 104.)

". . . . . . . ."

"Hon. Fiscal: ¿Qué es esto que le muestro a Vd.?

"R. Una carta.

"P. ¿De quién es la letra?

"R. De la acusada.

"P. Pido se identifique 29 la carta y sobre.

"Hon. Juez: Así se ordena.

"Hon. Fiscal: ¿Qué ocurrió en esa reunión en la Joyería Santurce en que estaban Vds. 3?

"R. La acusada confirmó verbalmente lo dicho en la carta, ofrecía pagar semanalmente y dar un anticipo de un dinero que iba a coger." (T.E., Pieza I, págs. 104–105.)

El testigo Sr. Tormes declaró:

"Hon. Fiscal: Después de la tercera interrupción, Dígame que contestó ella.

"R. Don Julio, le voy a pagar todo el dinero que falte así me tome el tiempo que me tome. Lo único que quiero es que no le informe a mi familia eso. Le contesté 'ya Vd. dice eso en la carta y lo consideraré, pero que garantía me puede dar para el pago del dinero'. 'No le puede dar ninguna" dijo. 'El esposo mío va a vender una de las casas, o va a entregar una de las casas, con lo que le devuelvan voy a hacer un abono de $700 y lo que gane semanal en otro sitio lo abonaré a la cuenta. Le dije. . . .' " (T.E., Pieza I, pág. 190.)

Por otra parte la propia acusada, declarando en el juicio, admitió que había firmado la carta y que había ofrecido pagar una cantidad de dinero y luego hacer unos abonos, aunque explica el incidente de la firma de la carta en la siguiente forma:

"P. ¿Qué Vd. le dijo?

"R. Yo le dije que yo no quería verme envuelta en esas cosas, que yo era inocente, que mi esposo iba a recibir un dinero de una devolución de una parte de una casa y yo para dejar eso así, yo le daba esos doscientos dólares y como era muy poco lo que me decía, según mi esposo me diera, yo le iba abonando, a lo que me dijo que eso no era constancia, que yo se lo hiciera saber con un papel, porque él también me dijo que iba a exigir a la señorita Folch igual.

"P. Mostrándole el exhibit 29, tenga la bondad de examinar este documento y dígame si esa es letra suya.

"R. Esa es letra mía.

"P. ¿Esa firma abajo es suya?

"R. Si señor.

"P. ¿La fecha es suya?

"R. No.

"P. ¿Usted no puso fecha?

"R. No, señor.

"P. ¿No le puso fecha?

"R. No, señor.

"P. Por qué no le puso fecha?

"R. Porque ese papel me lo iba diciendo él cómo yo lo hiciera y en ningún momento me dijo fecha.

"P. El le dictó este documento y Vd. lo escribió según él lo dictaba de su puño y letra?

"R. Sí. señor.

"Hon. Juez: ¿Qué exhibit es?

"Lic. Gelpí: El 29." (T.E., Pieza II, págs. 21 y 22.)

Aunque de ordinario el permitir que vaya la confesión escrita al jurado en violación de lo dispuesto en la Regla 140 de las de Procedimiento Criminal conllevaría la revocación de la sentencia y la concesión de un nuevo juicio, las circunstancias que concurren en este caso según las hemos dejado expuestas, y aun cuando se hubiere tratado en estricto derecho de una confesión, no justifican la revocación de la sentencia. *Pueblo* v. *Ramos Cruz*, 84 D.P.R. 563 (1962).

En el tercer error se alega que fue errónea la instrucción sobre lo que constituye el delito de abuso de confianza. Este señalamiento de error es frívolo. El Tribunal leyó al jurado el artículo del Código Penal que define dicho delito y luego usó el lenguaje que aprobamos en *Pueblo* v. *Reyes*, 19 D.P.R. 1148 (1913).

El cuarto señalamiento es igualmente frívolo. Se queja la apelante de que el Juez no instruyó al jurado cuál sería el grado del delito (de mayor o de menor cuantía) cuando la cantidad sustraída es exactamente cien dólares. La prueba no daba margen a una equivocación sobre ese extremo. La cantidad sustraída fraudulentamente excedía de $3,000.00. No se impugnaron partidas específicas que pudieran situar la sustracción en los límites de los cien dólares.

Se señala como quinto error la instrucción trasmitida al jurado en el sentido de que puede ser rechazada la presunción de veracidad que acompaña a todo testigo, entre otras razones "considerando evidencia de manifestaciones o actos

contradictorios ocurridos, dichos por el testigo o la testigo cuando ocupara la silla testifical, con su testimonio vertido en ocasiones anteriores, aunque ello no haya ocurrido en el recinto sagrado del Tribunal".

Esta instrucción no fue excepcionada por la defensa. Aparte de ello y aunque está lejos de ser un modelo de claridad, la instrucción se refiere a actos o manifestaciones anteriores del testigo fuera del tribunal sobre los cuales se ha presentado y admitido prueba. Obviamente, según afirma el Procurador General, no se refiere al conocimiento que pueda haber obtenido el jurado fuera del Tribunal especialmente cuando no hay el menor indicio de que ello hubiera ocurrido.

El sexto error, de haberse cometido no lesionó los derechos sustanciales de la apelante. En el supuesto de que fuera error permitir que el jurado pasase sobre prueba de sustracciones ocurridas fuera del período de tres años que marca la ley, su efecto se contraía a la naturaleza del delito, *felony* o *misdemeanor*. La prueba estableció sin embargo, que eliminando las partidas objetadas por la defensa comprendidas en el período prescrito, la cantidad apropiada fue de $3363.72 y no de $3719.19 como se alegaba en la acusación. Por otro lado, el *modus operandi* de la acusada para cometer las sustracciones fue el mismo durante todo el período cubierto por la acusación.

Es cierto, como se apunta en el séptimo señalamiento, que el Tribunal sentenciador delegó en el jurado "funciones judiciales instruyéndole que manifestaciones de la acusada podían ser consideradas como prueba por ellos si encontraban que las mismas fueron hechas libre y voluntariamente, debiendo rechazarlas y no considerarlas como prueba si llegaban a la conclusión de que no habían sido hechas libre y voluntariamente". Sin embargo ello no conlleva la revocación de la sentencia porque no hubo controversia sobre la voluntariedad de las manifestaciones de la acusada. En *Pueblo* v. *Arce*

*Rodríguez*, Sentencia de 9 de febrero de 1966, resolvimos entonces y es aquí de aplicación, lo siguiente:

"En cuanto al primer error señalado, no tiene razón el apelante. En el caso de autos la defensa no se opuso a la admisión en evidencia de la aludida confesión; tampoco levantó cuestión alguna respecto a la voluntariedad de la misma; ni del récord surge duda, conflicto o controversia alguna sobre este extremo. El Tribunal de instancia no tuvo ante sí ninguna controversia o cuestión sobre la voluntariedad de la confesión que tuviese que resolver. De haber surgido una controversia sobre la voluntariedad de la confesión no hay duda de el apelante tendría razón y de que el Juez habría tenido que resolver la misma. Regla 151.1 de las de Procedimiento Criminal; *Pueblo* v. *Figueroa*, res. en 8 de febrero de 1965; *Jackson* v. *Denno*, 378 U.S. 368. Pero como hemos dicho, en ningún momento se planteó controversia alguna sobre la voluntariedad de la confesión y por lo tanto no surgió una controversia sobre ese punto que el Juez pudiese resolver. V. *People* v. *Huntley*, 255 N.Y.S.2d 838, 841 (1955)."

█ La acusada no fue condenada con prueba insuficiente según se alega en el octavo y último error. A nuestro juicio el Procurador General contesta con propiedad este señalamiento en la siguiente forma:

"La prueba de cargo y la de defensa fueron conflictivas. La primera estableció que la acusada trabajaba en la Joyería Santurce Inc. Su función era recibir el dinero cobrado por los cobradores de la joyería a los clientes de la misma, hacer la acreditación correspondiente en la cuenta de los clientes y entregar el dinero a la caja acompañando una relación. Ella recibía el dinero, se lo acreditaba al cliente y en los recibos de los cobradores pero al entregar el dinero sólo entregaba parte de lo recibido. O sea, en las libretas que ella recibía de los cobradores aparecía lo recibido pero en los boletos que ella preparaba y enviaba a la caja con el dinero no aparecía el total recibido. (Véase como ejemplos del *modus operandi* T.E.—I, págs. 18, 22–24, 27, 28, 30, 68, 117.) En algunos casos ella no entregaba el total del abono de un cliente en específico mientras que en otros entregaba una parte del abono y no informaba el resto como sucedió en el caso del cliente Rafael Díaz Lebrón. En julio 5 del

1961 éste abonó $65.50 y ella remitió a caja solo $10.50. (T.E.—I, pág. 68.)

"El Fiscal estableció la apropiación a través de la documentación antes descrita así como a través de las admisiones orales de la acusada y una carta en la cual ella admite su responsabilidad. (Exhibit 29, T.E.—I, págs. 188–191.)

"La prueba de defensa consistió en negar toda participación en los hechos que dieron lugar al proceso. La acusada ocupó la silla de los testigos y trató de convencer al jurado que ella había sido acusada como chivo expiatorio con el propósito de encubrir un alegado fraude cometido por la joyería en perjuicio del poder contributivo del Estado. ¿Cómo es posible que un jurado medianamente inteligente pudiera creer que una corporación que hace negocios de cientos de miles de dólares, con la cantidad de pago de arbitrios que ello conlleva, trate de justificar un fraude contra el erario acusando a una simple empleada por el desfalco de una cantidad tan irrisoria, ante esta circunstancia, como la que se le imputó y probó a la acusada? Obviamente el jurado no pudo darle crédito a la prueba de defensa." (Informe del Procurador General, págs. 10 y 11.)

*Se confirmará la sentencia apelada.*

El Juez Presidente Señor Negrón Fernández no intervino. El Juez Asociado Señor Dávila concurre con el resultado.