EL PUEBLO DE PUERTO RICO, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. JOSÉ A. ANDRÉU GARCÍA, JUEZ, demandado; CONFESOR FALÚ FUENTES, interventor.

*Número:* O-72-35          *Resuelto:* 13 de septiembre de 1974

*Gilberto Gierbolini, Procurador General, Américo Serra, Procurador General Auxiliar,* abogados del peticionario; *Enrique Miranda Merced,* abogado del interventor.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

Mediante el recurso ante nuestra consideración el peticionario impugna la validez de una orden emitida al amparo de la Regla 95 de Procedimiento Criminal para que por el fiscal se permita a un acusado la inspección de determinados informes preparados por agentes de la Policía en relación con las causas seguidas contra él. Debemos resolver si los informes de los policías están más allá del alcance de la

Regla 95. Creemos que ello depende de las circunstancias de cada caso y que la expedición de una orden para revelar los informes antes del juicio es función que descansa en la discreción del juzgador. En cuanto al caso ante nos, no hallamos base para intervenir con la discreción ejercitada.

La Regla 95 de Procedimiento Criminal dice:

"Previa moción del acusado sometida en cualquier momento después de haberse presentado la acusación, el tribunal podrá ordenar al fiscal que produzca para ser inspeccionados, copiados o fotografiados por el acusado o su abogado, determinados objetos, libros, documentos y papeles que no fueren declaraciones juradas, con excepción de la declaración del propio acusado, que El Pueblo hubiese obtenido del acusado o de otras personas mediante orden judicial o de otro modo y que pudieren ser necesarios para la preparación de la defensa del acusado, independientemente de que El Pueblo se propusiere ofrecerlos en evidencia o de que los mismos fueren admisibles en evidencia. La orden especificará el tiempo, lugar y manera de hacer la inspección, de sacar las copias o tomar las fotografías y podrá prescribir los términos y condiciones que el tribunal estimare justos."

Confesor Falú Fuentes fue acusado ante el tribunal recurrido de varias infracciones de la anterior Ley de Narcóticos de 1959, 24 L.P.R.A. secs. 973 a 976m. Invocando la transcrita Regla 95 presentó una moción varios días antes de la fecha señalada para la celebración del juicio solicitando una orden, que fue expedida, y que dice textualmente:

"Vista la Moción radicada por el acusado al amparo de la Regla 95 de Procedimiento Criminal se declara con lugar la misma y se ordena al Fiscal y/o al Jefe de la División de Drogas y Narcóticos de Puerto Rico que produzca, para ser inspeccionados, copiados, fotografiados por el acusado y/o su abogado, todos los documentos relacionados con la transacción imputádole [sic] al acusado, tales como (Informe de Delito y de arresto) o aquellos acreditativos de desembolsos algunos por parte del Estado Libre Asociado a través de su agentes, la Policía de Puerto Rico.

Dichos documentos serán puestos a disposición del acusado, y/o su abogado durante horas laborables en o antes del 26 de noviembre de 1971, que es la fecha señalada para el juicio en estos casos. Notifíquese.

Hato Rey, P.R., a 23 de noviembre de 1971.

(Fdo.) José A. Andréu García

Juez Superior."

Expedimos auto de *certiorari* a solicitud del Procurador General. Alega el peticionario que "ni la Regla 95 de Procedimiento Criminal ni ninguna otra disposición legal autoriza a los tribunales de Puerto Rico para dictar una resolución y orden como la dictada en este caso." Pone énfasis en la redacción de la Regla 95 y señala que el descubrimiento que autoriza se refiere únicamente a objetos, libros, documentos o papeles obtenidos del acusado o de otras personas, y no a informes preparados por la Policía. Señala además que el acusado tiene que demostrar que los objetos y documentos son necesarios para su defensa. Cita en apoyo de su contención a *Pueblo* v. *Tribunal Superior*, 96 D.P.R. 746 (1968), *Pueblo* v. *Colón Rivera*, 93 D.P.R. 852 (1967), y jurisprudencia federal interpretativa de la Regla 16 de las Reglas Federales de Procedimiento Criminal, de donde procede nuestra Regla 95.

Los casos de *Colón Rivera* y *Pueblo* v. *Tribunal Superior*, plantearon situaciones distintas a la que consideramos. En *Colón Rivera* se obtuvo una orden antes de la celebración del juicio dirigida al dueño de una joyería para que pusiera a disposición de la acusada determinados libros y documentos de los negocios realizados por la firma durante el período de tres años cubierto por la acusación. Al señalar que los documentos no estaban en poder del fiscal y sí de su dueña, dijimos que el tribunal sentenciador concedió a la acusada un derecho de descubrimiento de prueba más amplio que el autorizado por la Regla 95. No podía ordenarse al fiscal que pro-

dujera documentos que estaban en poder de una persona particular y sobre los que no tenía control.

En *Pueblo* v. *Tribunal Superior*, se trataba de una causa criminal por varias infracciones a la Ley de Contribuciones sobre Ingresos. Resolvimos que el acusado no tenía derecho, bajo la Regla 95, a obtener e inspeccionar antes del juicio los informes sometidos al Secretario de Hacienda por los inspectores del Negociado de Contribuciones sobre Ingresos que investigaron sus planillas. Comentando el caso de *Palermo* v. *United States*, 360 U.S. 343 (1959), en que no estaba envuelto el derecho a descubrir prueba antes del juicio, que es el asunto que concierne a nuestra Regla 95 y que aquí nos ocupa, expresamos lo siguiente, a las págs. 753 y 754, al referirnos a la adopción por el Congreso de la Ley Pública 85–269 de 1957, 18 U.S.C. sec. 3500, que se adoptó como consecuencia de *Jencks* v. *United States*, 353 U.S. 657 (1957):

"En el análisis que hace del problema, expresa el Juez Frankfurter que una de las razones más importantes para la adopción del estatuto de 1957 (Sec. 3500) fue el grave temor de que bajo la decisión de *Jencks* se obligara a divulgar los sumarios o síntesis hechos por los agentes de las entrevistas con testigos, independientemente del carácter de dichos sumarios. Dice que se temió no sólo que la divulgación de *memorandos* conteniendo las *interpretaciones e impresiones* podían revelar los métodos internos de trabajo en el proceso investigador, en perjuicio del interés nacional, sino que sería muy injusto el permitir a la defensa impugnar un testigo con una declaración que no era la *suya propia,* sino el resultado de las selecciones, interpretaciones e interpolaciones hechas por el investigador. (360 U.S., a la pág. 350) El Tribunal se refiere entonces al significado del término 'declaración' (*statement*) bajo el estatuto aludido, y concluye que 'el memorando' solicitado no era tal documento, como uno de los que la ley permitía ser suministrados al acusado una vez que el testigo prestara en corte su testimonio directo."

Esas razones, dadas como válidas en *Palermo* en 1959

para negarle al acusado el memorando que un testigo, mientras declaraba durante el juicio y durante el examen directo dijo que había preparado, siguen siendo válidas hoy bajo circunstancias similares. Lo que se hizo en *Pueblo* v. *Tribunal Superior* fue aplicarlas al procedimiento de descubrimiento de prueba antes del juicio, no sin cierta renuncia, dada la naturaleza especial del caso que tenía este Tribunal ante su consideración. De ahí que señaláramos, a la pág. 757, que no estábamos ante "un caso penal corriente, sino uno que envuelve la violación de una ley sumamente técnica y especializada." No puede decirse lo mismo del caso que nos ocupa. Los casos por violación de los estatutos contra la posesión y el tráfico de drogas están hoy entre los más frecuentes en el diario quehacer de las salas de lo criminal del Tribunal Superior.

Además, no cerramos las puertas en *Pueblo* v. *Tribunal Superior* a la revelación de los informes de los agentes, aun en casos como aquél, por evasión del pago de impuestos. Dijimos, a las págs. 757 y 758:

"No obstante la referencia por vía de ilustración que hicimos del caso de *Palermo,* en este momento no expresamos criterio en cuanto a la acción procedente caso de que en el curso del juicio declaren los Inspectores aludidos, sobre cualquier materia de evidencia que pueda haber en el Informe y para fines de impugnación. De suscitarse la cuestión, entonces el juez sabrá interponer aquel grado de supervisión necesario sobre la inspección que proteja adecuadamente los derechos de todos los intereses envueltos."

Aunque podría argüirse que el acusado podría esperar al acto del juicio y entonces solicitar que se produzcan los informes una vez declare el agente policíaco (véase *Pueblo* v. *Ribas*, 83 D.P.R. 386 (1961)), tal práctica conduciría a una innecesaria dilación en los procedimientos, en perjuicio del principio de "tramitación justa" y de evitación de "dilaciones

y gastos injustificados" que leemos en la número uno de las Reglas de Procedimiento Criminal. ([1])

Hace catorce años—véase *Pueblo* v. *Tribunal Superior* a la pág. 748—sostuvimos que en una causa por homicidio con motivo de un accidente, el acusado tenía derecho a obtener, antes del juicio, de la institución o persona que lo tuviera bajo su custodia, copia del protocolo de autopsia, y a que el fiscal le suministrara las fotografías tomadas por la policía en el lugar del accidente. Entonces no regían las Reglas de Procedimiento Criminal, adoptadas en 1963. El procedimiento de descubrimiento de prueba adoptado mediante la número 95 no se adoptó para privar al acusado de un derecho que no le habíamos negado tres años antes.

La jurisprudencia federal que cita el peticionario resulta inaplicable no obstante referirse a la Regla 16 de las Reglas de Procedimiento Criminal federal adoptadas el 21 de marzo de 1946, de donde tomamos nuestra Regla 95. Es así porque al adoptar la Regla 16 federal le hicimos cambios que son de importancia en la consideración del planteamiento que nos ocupa. La Regla 16 federal, transcrita al margen según regía en 1963, ([2]) no hacía referencia, como nuestra Regla 95, a declaraciones juradas. La Regla 95 excluye del ámbito del descubrimiento de prueba las declaraciones juradas en poder del fiscal, y específicamente obliga a la entrega de declaraciones prestadas por el acusado. La Regla federal limitaba

---

[1] "Estas reglas serán conocidas y citadas como 'Reglas de Procedimiento Criminal'. Se interpretarán de modo que aseguren la tramitación justa de todo procedimiento y eviten dilaciones y gastos injustificados."

[2] "Upon motion of a defendant at any time after the filing of the indictment or information, the court may order the attorney for the government to permit the defendant to inspect, and copy or photograph designated books, papers, documents or tangible objects, obtained from or belonging to the defendant or obtained from others by seizure or by process, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable. The order shall specify the time, place and manner of making the inspection and of taking the copies or photographs and may prescribe such terms and conditions as are just."

el descubrimiento a libros, papeles, documentos y objetos obtenidos del o pertenecientes al acusado u obtenidos de otras personas sólo mediante orden judicial o proceso. La Regla 95 permite que se revelen si se obtuvieron "mediante orden judicial o de otro modo." La Regla federal requiere del acusado que demuestre que los documentos y objetos son necesarios para su defensa. Ese requisito se omitió en la nuestra. Nuestra Regla permite la inspección de los documentos "independientemente de que El Pueblo se propusiere ofrecerlos en evidencia o de que los mismos fueren admisibles en evidencia." La Regla 16 federal nada decía sobre este particular. Como puede verse, nuestra Regla 95 resulta ser más liberal que su originaria federal.

■ Es significativo que la Regla 16 federal fuera enmendada, primero tácitamente por la Ley Pública 85–269 de 1957, y luego expresamente en 1966 al incorporársele lo dispuesto por la citada Ley 85–269, precisamente para prohibir lo que el tribunal recurrido concedió en nuestro caso a Falú Fuentes. Según quedó enmendada en 1966, la Regla 16 federal ahora "prohibe el descubrimiento o inspección de informes, memoranda, o cualquier otro documento interno del Gobierno hecho por agentes del mismo, relacionados con la investigación del caso, a menos que sea conforme a la Sec. 3500, esto es, hasta que el testigo del Gobierno haya declarado en examen directo en corte." *Pueblo* v. *Tribunal Superior*, supra, pág. 752. Véase el original en inglés al margen, *infra*. (³) La Regla 95 nuestra

---

(³)"Rule 16. Discovery and Inspection.

(a) .     .     .     .     .     .     .     .

(b) OTHER BOOKS, PAPERS, DOCUMENTS, TANGIBLE OBJECTS OR PLACES. Upon motion of a defendant the court may order the attorney for the government to permit the defendant to inspect and copy or photograph books, papers, documents, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, upon a showing of materiality to the preparation of his defense and that the request is reasonable. Except as provided in subdivision (a)(2), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by government

no ha sido enmendada y por tanto no prohíbe, como lo hace ahora la federal, el descubrimiento que se ordenó por el tribunal recurrido.

Argumenta el peticionario que el acusado, aquí interventor Falú Fuentes, "no ha demostrado que los documentos que solicita inspeccionar fueron obtenidos por El Pueblo de él o de otras personas." Ciertamente la Regla 95 se refiere a documentos "que El Pueblo hubiese obtenido del acusado o de otras personas." El argumento invita a una interpretación restrictiva de esas palabras contra las claras directrices de la Regla primera: "Se interpretarán de modo que aseguren la tramitación justa de todo procedimiento y eviten dilaciones y gastos injustificados." Sería además contrario a la moderna tendencia hacia la liberalidad en el descubrimiento de prueba antes del juicio. Véase *National Advisory Commission on Criminal Justice Standards and Goals, Report on Courts* (1973), págs. 89 a 92, en que se expone y comenta el *standard* 4.9. Véanse también el *Comparative Analysis of Standards and Goals of the National Advisory Commission on Criminal Justice Standards and Goals with Standards for Criminal Justice of the American Bar Association,* impreso en junio de 1974, catálogo núm. 74-75181 de la Biblioteca del Congreso, págs. 210 y siguientes y *Evans* v. *Superior Court of Contra Costa County,* 114 Cal. Rptr. 121, 124 (1974).

La restrictiva interpretación de la frase "que El Pueblo hubiese obtenido del acusado o de otras personas" se prestaría al absurdo de que objetos hallados por la policía en la escena de un crimen—un arma de fuego, por ejemplo—por no

---

agents in connection with the investigation or prosecution of the case, or of statements made by government witnesses or prospective government witnesses (other than the defendant) to agents of the government except as provided in 18 U.S.C., § 3500.

    (c) .        .        .        .        .        .        .

    (d) .        .        .        .        .        .        .

    (e) .        .        .        .        .        .        .

    (f) .        .        .        .        .        .        .

    (g) .        .        .        .        .        .        ."

haber sido obtenidos de persona alguna, estarían fuera del alcance de la Regla. Podría prestarse además tal interpretación a la ocultación de prueba—fotografías tomadas por la policía, por ejemplo—que podrían ser beneficiosas para el acusado creando una duda razonable sobre su culpabilidad y aun probando su inocencia. La justicia está por encima de las sutilidades lingüísticas.

El procedimiento de la Regla 95 no confiere, sin embargo, un derecho absoluto a descubrir todos los documentos y objetos a que la Regla se refiere. El acusado tiene derecho a solicitar el descubrimiento "en cualquier momento después de haberse presentado la acusación." Su concesión es, sin embargo, función que descansa en la facultad discrecional del tribunal que juzga el caso. En el descargo de esa función deberá el tribunal establecer un justo balance entre los derechos del acusado y los intereses del Estado. Para ello deberá tomar en consideración si los objetos, libros, documentos y papeles que el acusado interesa examinar se relacionan o describen con suficiente especificación y son pertinentes para su defensa; su importancia para la seguridad del Estado o la confidencialidad de la labor investigativa; y la razonabilidad de la petición tomando en cuenta sus propósitos, de manera que no haya innecesarias dilaciones en los procedimientos ni hostigación o molestias indebidas a los funcionarios del Estado.

En el caso de autos el acusado solicitó del tribunal recurrido que se produjeran para su inspección todos los documentos relacionados con la transacción que dio lugar a la acusación, y especificó "informe de delito y de arresto" y los "acreditativos de desembolsos" por parte del Estado. La pertinencia de estos informes nos parece incuestionable en este caso. Su importancia para la defensa del acusado se hace más patente cuando se trata de delitos como los imputados a Falú Fuentes, en que la prueba de El Pueblo se hace depender generalmente del testimonio de agentes encubiertos. En varias ocasiones hemos reconocido la condición de desventaja en que

480

en muchos de estos casos se encuentra el acusado. *Pueblo* v. *Rosario Torres*, 101 D.P.R. 840 (1973); *Pueblo* v. *Soto Zaragoza*, 94 D.P.R. 350 (1967); *Pueblo* v. *Ayala Ruiz*, 93 D.P.R. 704 (1966). El fiscal ni alegó ni ofreció prueba de que la revelación de los informes solicitados por el acusado afectaría la seguridad del Estado o las labores investigativas de sus agentes policíacos. La moción fue presentada con suficiente antelación a la fecha señalada para la celebración del juicio y nada hay en los autos demostrativo de propósitos dilatorios u opresivos para con la otra parte. No hay base en los autos para intervenir con la discreción del tribunal recurrido.

*Se anulará el auto expedido y se devolverá el caso al tribunal recurrido para la continuación de los trámites pertinentes.*