EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Joshua Sanders Cordero<br><br>Recurrido | Certiorari<br><br>2018 TSPR 35<br><br>199 \_\_\_\_ |
|---|---|

Número del Caso: CC-2017-867

Fecha: 23 de febrero de 2018

Tribunal de Apelaciones:

> Región Judicial de Utuado

Oficina del Procurador General:

> Lcdo. Luis R. Román Negrón
> Procurador General
>
> Lcda. Laura W. Robles Vega
> Procuradora General Auxiliar

Abogado de la parte recurrida

> Lcdo. José Rivera Jiménez

Materia: Procedimiento Criminal – Un tribunal que ordena la reproducción y entrega de unos vídeos que presuntamente contienen la identidad de un agente encubierto en funciones, sin conocer y considerar los elementos indispensables en el caso, abusa de su discreción.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico | | |
| --- | --- | --- |
| Peticionario | | |
| v. | CC-2017-867 | |
| Joshua Sanders Cordero | | |
| Recurrido | | |

**EL JUEZ ASOCIADO SEÑOR RIVERA GARCÍA emitió la opinión del Tribunal.**

(REGLA 50)

En San Juan, Puerto Rico, a 23 de febrero de 2018.

El ejercicio de la discreción judicial debe ser sano, informado y consciente; debe garantizar una determinación prudente que sopese los intereses envueltos cuidadosamente sin abstracción de los elementos indispensables en el caso. En esta ocasión tenemos la oportunidad de expresarnos en cuanto a ciertos linderos de la discreción en un proceso de descubrimiento de prueba. Lo anterior, particularmente, cuando el Ministerio Público solicita una orden protectora sobre unos videos que pondrían en peligro la seguridad y la vida de un agente encubierto, aún en funciones, y que su publicación revelaría las técnicas de investigación del Estado en casos similares. Por los fundamentos que esbozamos a continuación, determinamos que el foro de instancia abusó de su discreción al declarar no ha lugar la solicitud de orden protectora.

Los hechos que dieron origen al recurso ante nuestra consideración no están en controversia.[1] Los exponemos a continuación.

I

El Sr. Joshua Sanders Cordero (señor Sanders Cordero o recurrido) fue acusado de infringir varias disposiciones de la Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971, según enmendada.[2] El 17 de marzo de 2017, el Ministerio Fiscal solicitó que se celebrara una vista de necesidad para excluir del juicio al público durante el testimonio de un agente encubierto, AE-11-10-SSF-097, quien se encuentra en funciones. En ésta el recurrido se allanó a que el testimonio de este agente encubierto se celebrara en privado.[3]

Celebrada la vista de necesidad, y concedido el petitorio del Ministerio Público, el señor Sanders Cordero presentó una solicitud de descubrimiento de prueba al amparo de la Regla 95 de Procedimiento Criminal, *infra*. Entre otras cosas, solicitó que se descubriera cualquier video de investigaciones realizadas sobre el caso.[4] El 12 de junio de 2017 el Estado contestó el petitorio del recurrido. Indicó

---

[1] Véanse la Petición de *certiorari*, págs. 4-7, y la *Moción en oposición a petición de certiorari*, pág. 5.

[2] Específicamente, los Arts. 401, 403 (dos acusaciones) y 411 (dos acusaciones) de la Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971, según enmendada, 24 LPRA secs. 2401, 2403 y 2411, respectivamente. Índice de apéndice, Anejo II, págs. 34-43.

[3] Íd., pág. 46.

[4] Íd., pág. 50, inciso (p).

que, "con relación a los videos, deb[ía] comunicarse con el Fiscal que suscrib[ía]".[5] Resaltó la disposición del Ministerio Fiscal para que los videos fueran vistos e inspeccionados por la defensa, las veces que estimara razonable.[6] Posteriormente, el Estado presentó otro escrito complementario en el que reiteró que la defensa podía acudir a las oficinas de Fiscalía en Utuado para estudiar e inspeccionar, entre otras cosas, los videos solicitados previamente. Ello, las veces que estimara prudentes y razonables.[7]

El 10 de julio de 2017, en la conferencia con antelación al juicio, el señor Sanders Cordero señaló que el Ministerio Público no le había provisto una copia de los videos tomados por el Estado que presuntamente revelan las transacciones ilegales. El Estado, por otra parte, sostuvo que la defensa tenía conocimiento de que los referidos videos estaban disponibles para ser examinados en Fiscalía, las veces que estimara razonable. Destacó que los videos mostraban las técnicas investigativas utilizadas por los agentes para combatir el crimen y que exponer su contenido pondría en peligro la vida y la seguridad del agente encubierto. Así las cosas, el Tribunal de Primera Instancia señaló que el Ministerio Fiscal tenía que descubrir de todas maneras los

---

[5] Íd., pág. 55.

[6] Íd.

[7] Íd., pág. 58.

videos, por lo cual ordenó que entregara a la defensa una copia de éstos en un término de veinte días.[8]

Como consecuencia, el 19 de julio de 2017 el Ministerio Público solicitó una orden protectora. En síntesis, arguyó lo siguiente: *primero,* que el agente encubierto de los videos aún se encontraba en funciones; *segundo*, que la entrega de los videos pondría en riesgo su seguridad; *tercero*, que esto a su vez dejaría al descubierto las estrategias utilizadas por los agentes encubiertos para combatir la venta de sustancias controladas; y, *cuarto*, que en vista de ello, le había indicado a la defensa del señor Sanders Cordero que los videos estarían disponibles para ser inspeccionados en sus oficinas cuantas veces considerara razonable.

En desacuerdo con el petitorio del Estado, el señor Sanders Cordero alegó que la jurisprudencia y las Reglas de Procedimiento Criminal exigían la entrega de los videos para preparar una defensa adecuada y contrainterrogar los testigos.[9] Arguyó que los videos debían ser descubiertos porque "podrían ser prueba exculpatoria" y para poder ser analizados "posiblemente mediante perito", por existir la probabilidad de que no hayan sido manejados conforme a derecho.[10]

---

[8] Íd., págs. 59-60. Una vez el Ministerio Público informó su inconformidad con la decisión del foro primario y su intención de recurrir al Tribunal de Apelaciones, se concedió a las partes diez días para presentar sus argumentos por escrito. Ahora bien, cabe aclarar que la orden de que se entregaran los videos se mantuvo vigente. Íd.

[9] Íd., pág. 70.

[10] Íd., págs. 70-71. También expresó que los videos eran una pieza sobre las cuales solicitaría supresión oportunamente. Íd., pág. 71.

El Tribunal de Primera Instancia emitió una resolución en la que declaró **no ha lugar** la solicitud de orden protectora y ordenó la entrega de los videos al señor Sanders Cordero. Resolvió que la entrega debía realizarse para que el acusado se preparara adecuadamente, a los fines de examinarlo con un perito y poder evaluar si fueron resguardados conforme a la normativa de cadena de custodia.[11]

Inconforme, el 1 de septiembre de 2017 el Ministerio Público presentó una Petición de *certiorari* ante Tribunal de Apelaciones, junto a una solicitud en auxilio de jurisdicción. Como este último no se había pronunciado sobre la comparecencia del Estado, el 8 de noviembre de 2017 el foro de instancia reiteró su orden en cuanto a que los videos solicitados fueran entregados a la defensa y, entonces, señaló una vista de medidas cautelares para el 12 de diciembre de 2017.

El 27 de octubre de 2017 el foro apelativo intermedio emitió una resolución, notificada el 4 de diciembre, en la que denegó la solicitud en auxilio de jurisdicción y expedir la petición de *certiorari*. Entendió que el recurso no procedía porque el foro inferior no había abusado de su discreción al declarar no ha lugar la solicitud de orden protectora y decretó la entrega de los videos en controversia.

---

[11] Íd., pág. 85.

El 8 de diciembre de 2017 el Ministerio Fiscal, representado por la Oficina del Procurador General, presentó ante esta Curia una Petición de *certiorari* junto a una *Urgente moción en auxilio de jurisdicción*. Examinados los planteamientos del Procurador General, emitimos una resolución en la que paralizamos los procedimientos ante el Tribunal de Primera Instancia y concedimos al señor Sanders Cordero un término de treinta días para que mostrara causa por la cual no debíamos expedir el auto de *certiorari*.

En su comparecencia ante nos, el señor Sanders Cordero aduce que la entrega de la copia de los videos "es necesaria e imprescindible para preparar adecuadamente su defensa entiéndase, para determinar la autenticidad de los videos y corroborar el principal testimonio del caso".[12] Alega que el Ministerio Público está obligado a entregar los videos, conforme la Regla 95 de Procedimiento Criminal y que acudir a Fiscalía en Utuado constituye una limitación irrazonable. Arguye que el Tribunal de Apelaciones y el Tribunal de Primera Instancia coincidieron en que procede la entrega de los videos como parte del descubrimiento de prueba. Sostiene, además, que no entregar la prueba infringe su debido proceso de ley ya que los videos contienen prueba exculpatoria. Sobre este último asunto, se sustenta en que "podrían conducir a una determinación judicial de que la credibilidad del

---

[12] *Moción en oposición a petición de certiorari*, pág. 1.

principal testigo es altamente cuestionable".[13] Expone que el derecho a obtener copia de los videos que le concede el debido proceso de ley, es una razón de mayor peso que el interés que ostenta el Estado para limitar el acceso a dicha evidencia en las oficinas de la Fiscalía en Utuado.[14] Asimismo, señala que el foro primario había tomado medidas cautelares en el caso para proteger el interés del Estado en salvaguardar la identidad del agente encubierto.

Expuesto el marco fáctico que antecede, procedemos a resolver.

## II

Nuestro sistema de justicia reconoce el derecho de toda persona a defenderse de una acusación criminal en su contra y a obtener, mediante descubrimiento de prueba, evidencia que le favorezca.[15] En innumerables ocasiones hemos resuelto que la capacidad de descubrir prueba de un acusado es consustancial con el derecho a defenderse adecuadamente.[16]

---

[13] Íd., pág. 2.

[14] Íd., pág. 12.

[15] Pueblo v. Arocho Soto, 137 DPR 762, 766 (1994); Pueblo v. Santa-Cruz Bacardí, 149 DPR 223, 231 (1999). El Art. II, Sec. 7 de la Constitución de Puerto Rico reconoce el derecho de toda persona a un debido proceso de ley como condición previa a ser privado de su libertad. Art. II, Sec. 7, Const. PR., LPRA, Tomo 1, pág. 301. Véanse además: Pueblo v. Custodio Colón, 192 DPR 567, 579 (2015); Pueblo v. Olmeda Zayas, 176 DPR 7, 14 (2009). De ahí que el derecho a defenderse de todo acusado en un proceso criminal en su contra sea considerado de estirpe constitucional.

[16] Pueblo v. Guzmán, 161 DPR 137, 147 (2004); Pueblo v. Arzuaga, 160 DPR 520 (2003); Pueblo v. Santa-Cruz Bacardí, supra, pág. 231; Pueblo v. Arocho Soto, supra, pág. 766, al citar a Pueblo v. Echevarría, 128 DPR 299 (1991); Pueblo v. Rodríguez Sánchez, 109 DPR 243 (1979); Pueblo v. Tribunal Superior, 102 DPR 470 (1974); Hoyos Gómez v. Tribunal Superior, 90 DPR 201 (1964).

No obstante lo anterior, la facultad para requerir descubrimiento de prueba no es absoluta, sino que se rige, por lo general, por las Reglas de Procedimiento Criminal en un contexto práctico.[17] En ese sentido, hemos establecido que la solicitud que a esos efectos realice el acusado, pero se sustente en la cláusula constitucional de debido proceso de ley (*due process*), no debe tomarse de manera liviana ni abre las puertas para que se otorgue al acusado el descubrimiento de cualquier tipo de material o información.[18]

Así pues, la Regla 95 de Procedimiento Criminal, 34 LPRA Ap. II, gobierna lo concerniente al descubrimiento de prueba del Estado a favor del acusado al consignar lo siguiente:

**Regla 95. Descubrimiento de prueba del Ministerio Fiscal en favor del acusado**

(a) El acusado presentará moción al amparo de esta Regla dentro en un término de cumplimiento estricto de veinte (20) días contados a partir de: i) la celebración del acto de lectura de acusación en los casos que se impute la comisión de un delito grave; o ii) la primera comparecencia del acusado al proceso asistido por el abogado que habrá de

---

[17] Pueblo v. Olmeda Zayas, *supra*, pág. 14; Pueblo v. Custodio Colón, *supra,* pág. 579. Véase Regla 94, 95 y 95B de Procedimiento Criminal, 34 LPRA Ap. II, págs. 509-514.

[18] Pueblo v. Custodio Colón, *supra*, pág. 587. La cláusula de debido proceso de ley de nuestra Carta Magna y de la Constitución Federal solo entra en juego cuando la prueba solicitada por el acusado, o no descubierta por el Estado, resulta ser exculpatoria conforme lo resuelto en Brady v. Maryland, 373 US 83 (1963), y su progenie. Véanse, e.g.: Strickler v. Greene, 527 US 263 (1999); Wood v. Bartholomew, 516 US 1 (1996); Kyles v. Whitney, 514 US 419 (1995); United States v. Bagley, 473 US 667 (1985); Weatherford v. Bursey, 429 US 545 (1977); United States v. Agurs, 427 US 97 (1976); Ring v. United States, 419 US 18 (1974); DeMarco v. United States, 415 US 449 (1974); Giglio v. United States, 405 US 150 (1972); Giles v. Maryland, 386 US 66 (1967); Pueblo v. Custodio Colón, *supra*, págs. 587-588; Pueblo v. Velázquez Colón, 174 DPR 304 (2008); Pueblo v. Arzuaga, *supra*, pág. 535; Pueblo v. Ríos Álvarez, 112 DPR 92, 102 (1982); Pueblo v. Cancel Hernández, 111 DPR 625 (1981); Pueblo v. Rodríguez Sánchez, *supra*. **Prueba exculpatoria** es aquella que resulta favorable al acusado y que posee relevancia en cuanto a los aspectos de culpabilidad o castigo del acusado. Brady v. Maryland, *supra*.

representarlo en el juicio, en los casos en que se impute la comisión de un delito menos grave. En el caso que la persona acusada manifieste que se representará por derecho propio, el tribunal deberá advertirle desde cuándo comienza a discurrir el término establecido en esta regla, así como las consecuencias de su incumplimiento. Sometida la moción de la defensa conforme a lo dispuesto en esta regla, el tribunal ordenará al Ministerio Fiscal o a cualquier agencia o instrumentalidad pública que permita al acusado **inspeccionar, copiar o fotocopiar el siguiente material o información** que está en posesión, custodia o control del Ministerio Fiscal o a cualquier agencia o instrumentalidad pública:

(1) Cualquier declaración jurada que el Ministerio Fiscal tenga del acusado.

(2) Cualquier declaración jurada de los testigos de cargo que hayan declarado en la vista para determinación de causa probable para el arresto o citación, en la vista preliminar, en el juicio o que fueron renunciados por el Ministerio Fiscal y los récords de convicciones criminales previas de éstos.

(3) Cualquier resultado o informe de exámenes físicos o mentales y de experimentos o pruebas científicas que sea relevante para preparar adecuadamente la defensa del acusado o que vaya a ser utilizado en el juicio por el Ministerio Fiscal.

(4) **Cualquier libro, papel, documento, fotografía, objeto tangible, estructura o lugar que sea relevante para preparar adecuadamente la defensa del acusado, que el Ministerio Fiscal se propone utilizar en el juicio o que fue obtenido del acusado o perteneciera al acusado.**

(5) El récord de convicciones criminales previas del acusado.

(6) Cualquier informe preparado por agentes de la Policía en relación con las causas seguidas contra el acusado que sea relevante para preparar adecuadamente la defensa del acusado. **El descubrimiento de esta prueba estará sujeto a las siguientes condiciones:**

(A) Que los objetos, libros, documentos y papeles que el acusado interesa examinar se relacionan o describen con suficiente especificación;

(B) **que no afecte la seguridad del Estado ni las labores investigativas de sus agentes policiacos**, y

(C) la correspondiente moción del acusado sea presentada con suficiente antelación a la fecha señalada para la celebración del juicio, de manera que no haya innecesarias dilaciones en los procedimientos ni se produzcan molestias indebidas a los funcionarios del Estado.

(b) El Ministerio Fiscal revelará toda aquella evidencia exculpatoria del acusado que tenga en su poder.

(c) La defensa deberá incluir, junto con la solicitud de descubrimiento de prueba, las órdenes necesarias para solicitar el material o la información que prevee que el Ministerio Público no tendrá bajo su custodia, dirigidas a las personas o entidades que la poseen, custodian o controlan. El Ministerio Público deberá entregar la información y/o material solicitado que tenga bajo su custodia o control e informar al tribunal si existe algún material o información que le fue solicitada, pero que no se encuentra bajo su posesión, custodia o control, en cuyo caso el tribunal ordenará a la persona o entidad que la posea, custodie o controle, que la ponga a la disposición del acusado.

(d) No estarán sujetos a descubrimiento o inspección de la defensa los escritos de investigación legal, informes, memorandos, correspondencia u otros documentos internos que contengan opiniones, teorías o conclusiones del Ministerio Fiscal.

(e) Toda información y/o material que se pretenda solicitar y no esté enumerado en esta regla, deberá venir acompañado de una explicación sobre la necesidad o pertinencia que tiene el mismo para la defensa del acusado. (Énfasis suplido).

Conforme surge de la Regla 95, generalmente, el descubrimiento de prueba a favor del acusado se realiza al permitirle inspeccionar, copiar o fotocopiar la prueba

solicitada.[19] Empero, según mencionáramos, se desprende de la disposición precitada que el derecho del acusado a descubrir prueba, aunque amplio, no es absoluto ni ilimitado.[20] En el caso de prueba documental o evidencia demostrativa, tanto real como ilustrativa, la Regla 95 establece que el descubrimiento se realizará cuando esté presente alguna de las circunstancias siguientes: (1) que la evidencia fue obtenida del acusado o le pertenecía, (2) que el Ministerio Público se propone utilizarla en el juicio, o (3) que es relevante para preparar adecuadamente la defensa del acusado.[21] De igual manera, erigió que el descubrimiento de prueba de aquella información o materiales recopilados por el Estado en relación a las causas seguidas contra un acusado está sujeto, *inter alia*, a que no se afecte la seguridad del

---

[19] Al igual que la Regla 95 de Procedimiento Criminal de Puerto Rico, la Regla 16 de Procedimiento Criminal Federal provee para el descubrimiento a favor de la defensa de documentos y objetos tangibles, reconociendo que este puede cumplirse al permitir su inspección o el que se reciba copia de la prueba. Véanse: Federal Rule of Criminal Procedure, R. 16; W. R. LaFave y otros, Criminal Procedure, 4ta ed., Thomson Reuters, 2015, Vol. V, págs. 483-484 ("Federal Rule 16 and all of the state discovery provisions provide for defense discovery of documents and tangible objects, with discovery constituting allowing inspection or receiving copies, depending upon the character of the document".).

[20] Véase Pueblo v. Olmeda Zayas, *supra,* págs. 14-15 ("hemos resuelto que el derecho de un acusado a descubrir la prueba en poder del Ministerio Público surge, por lo general, de la Regla 95 de Procedimiento Criminal, *supra.* En este sentido, el descubrimiento de prueba que rebasa el texto de dicha regla y busca apoyo en el debido proceso de ley no es un recurso que deba invocarse livianamente. Al aprobarse nuestra Constitución, no se pretendió conceder a los acusados el derecho ilimitado de revisar los archivos del Ministerio Público ni el de exigir la entrega de todo material que pueda estar relacionado con el caso penal entablado en su contra".); Pueblo v. Santa-Cruz Bacardí, *supra,* pág. 231; Pueblo v. Arocho Soto, *supra*, pág. 766 ("Como hemos resuelto ya, el ámbito del derecho del acusado al descubrimiento de prueba está delimitado, como norma general, por lo dispuesto en las Reglas 94, 95 y 95B de Procedimiento Criminal de Puerto Rico, 34 L.P.R.A. Ap. II […]".).

[21] Regla 95 de Procedimiento Criminal, *supra*; E. L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, 1ra ed., Colombia, Ed. FORUM, 1993, Vol. III, pág. 334.

Estado, ni las labores investigativas de los agentes del orden público.

Cónsono con ello, a pesar de que la Regla 95 de Procedimiento Criminal instituye el derecho del acusado a conocer sobre la prueba allí consignada, también dispone la posibilidad de que cualquiera de las partes solicite órdenes protectoras que limiten, restrinjan, aplacen o condicionen esta facultad.[22] A esos efectos, en lo pertinente, la Regla 95B de Procedimiento Criminal, *supra*, establece que "[m]ediante moción de cualquiera de las partes que esté debidamente fundamentada, el tribunal podrá ordenar que el descubrimiento o inspección sea dirigido, restringido, aplazado o condicionado, así como emitir cualquier orden que estime necesaria". En este ejercicio el tribunal puede establecer la forma en que se hará el descubrimiento, así como los términos y condiciones que considere justos y necesarios.[23] Al amparo de esta prerrogativa judicial, cuando el caso lo amerite, los tribunales deben acceder a una petición de orden protectora para limitar, restringir, aplazar o condicionar el descubrimiento de prueba. La determinación que se realice al respecto, "descansa en la sana discreción del tribunal que **debe considerar ciertos**

---

[22] Véase <u>Taylor v. Illinois</u>, 484 US 400, 415 esc. 20 (1988) ("Under the Federal Rules of Criminal Procedure and under the rules adopted by most States, a party may request a protective order if he or she has just cause for objecting to a discovery request. See, *e.g.,* Fed. Rule Crim. Proc. 16(d)(1) […]".).

[23] Regla 95B(d) de Procedimiento Criminal, 34 LPRA Ap. II, pág. 514.

**elementos** al realizar un balance entre los derechos del acusado y el interés del Estado". (Énfasis suplido).[24]

### III

Resulta imprescindible resaltar que la Constitución de Puerto Rico reconoce, también, el derecho fundamental a la vida.[25] Este, inequívocamente, constituye el derecho por excelencia y de mayor jerarquía reconocido en nuestra Carta Magna. En virtud de esta premisa, desde Pueblo v. Elicier Díaz, 183 DPR 167 (2011), resolvimos que la identidad de un agente encubierto en funciones constituye, de por sí, un interés apremiante del Estado que merece y demanda nuestra protección. Es que un agente se adentra en el propio corazón de la conspiración y penetra los más oscuros recintos del crimen organizado.[26] Al hacerlo es inevitable que éste ponga la integridad física y la vida en inminente peligro.[27] Por ello, allí pautamos que en circunstancias en que estuviera presente dicho interés del Estado era posible limitar un

---

[24] Pueblo v. Custodio Colón, *supra,* pág. 586. El balance dependerá, *inter alia*, del interés que persigue proteger el Estado y de dónde emana el derecho del acusado, a saber, si se trata del descubrimiento de prueba meramente al amparo de las Regla 95 de Procedimiento Criminal o en virtud de la cláusula constitucional de debido proceso de ley. Véase además: Pueblo v. Rodríguez Sánchez, *supra*, pág. 248 ("El descubrimiento de prueba en el proceso criminal debe enancharse hasta donde permita la competencia entre el interés del acusado en su defensa y la confidencialidad de determinados documentos y expedientes, moderada por una discreción judicial que habrá de decidir si la utilidad que para la defensa representa esa prueba supera los intereses del Estado y de terceras personas a cuya protección va dirigida la norma de secretividad".).

[25] Const. PR, *supra*, pág. 301.

[26] Pueblo v. Elicier Díaz, 183 DPR 167, 203 (2011).

[27] Íd.

derecho constitucional, como es el derecho a juicio público de un acusado.[28]

La existencia de este interés apremiante del Estado, sin duda, obliga a los jueces a ser sumamente cautelosos para que en el descubrimiento de prueba la protección que se buscó concederle no se vea frustrada inexorablemente.[29] Es por esto que aunque hemos reconocido la discreción del foro primario al atender órdenes protectoras al amparo de la Regla 95B, lo cierto es que, con el objetivo de hallar el balance justo y adecuado, **el tribunal debe considerar las circunstancias particulares del caso, la prueba que solicita el acusado y las posibles alternativas disponibles para proveer el descubrimiento de prueba.**[30] Es decir, el tribunal está llamado a realizar una **evaluación completa** que le permita dilucidar si existe la necesidad de emitir alguna orden sobre la forma, los términos y las condiciones en que se debe llevar a cabo el descubrimiento de la prueba, conforme reconoce la Regla 95B de Procedimiento Criminal.

Veamos si el foro primario realizó dicha evaluación y ponderó en su totalidad los intereses encontrados. De modo

---

[28] Exigimos que, en vista de que se afectaba **un derecho constitucional**, la protección que el tribunal concediera al interés apremiante del Estado **no fuera más amplia de lo necesaria** a la luz de las circunstancias particulares del caso. Resolvimos que cerrar la vista cuando el agente encubierto en funciones declaraba cumplía con la norma establecida. Íd.

[29] Véase Pennsylvania v. Ritchie, 480 US 39, 60 (1987) ("To allow full disclosure to defense counsel in this type of case would sacrifice unnecessarily the Commonwealth's compelling interest […]".).

[30] Véase Pueblo v. Custodio Colón, *supra*, pág. 586 ("Este delicado balance tiene que realizarse tomando en consideración **los hechos del caso y la totalidad de las circunstancias** que rodean la acción". (Énfasis suplido)).

que, en efecto, se haya asegurado de que la determinación recurrida constituye el balance que debe conseguir entre los intereses del Estado y el derecho reconocido al acusado en la Regla 95 de Procedimiento Criminal.

**IV**

En el pasado este Tribunal ha evitado intervenir con las determinaciones que realiza el foro primario sobre el descubrimiento de prueba, salvo aquellas instancias en que su actuación es arbitraria o constituye un abuso de discreción.[31] En ese sentido, se ha precisado que

> [l]os elementos para considerar si un tribunal incurrió en abuso de discreción son, entre otros, cuando: (1) **el juez no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto**; (2) el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en él, o (3) a pesar de tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, **el juez sopesa y los calibra livianamente**. (Énfasis suplido).[32]

En el caso de autos las partes no cuestionan la relevancia de los videos para la acusación, ni que el Ministerio Fiscal se propone utilizarlos en el juicio contra el recurrido. Tampoco debaten que la Regla 95 de Procedimiento Criminal concede al acusado el derecho a que esta prueba sea descubierta. La controversia realmente gira en cuanto a cómo el foro primario evaluó los planteamientos

---

[31] Íd., pág. 588.

[32] Íd., págs. 588-589.

de las partes y la forma en que, como consecuencia, ordenó el descubrimiento de los videos.

Un examen del trámite seguido en este caso nos convence de que el Tribunal de Primera Instancia abusó de su discreción al evaluar los planteamientos de las partes y ordenar la reproducción y entrega de los videos en controversia. Nos explicamos.

*Primero,* el foro primario emitió un dictamen sin conocer el contenido de los videos y, por consiguiente, no consideró la totalidad de las circunstancias.[33] Es por esto que su determinación no asegura el balance justo y adecuado que debía conseguir entre los intereses del Estado y el derecho del acusado. Para ello, por ejemplo, **hubiera bastado que estudiara en cámara los videos** con el objetivo de dilucidar si éstos mostraban la identidad del agente encubierto en funciones y, por ende, la necesidad de conceder o no el petitorio de las partes. Esto con el fin de determinar cuál era la forma óptima en que se debía llevar a cabo el descubrimiento de esta prueba.[34] Así, si de la prueba se desprende que la seguridad del agente del orden público está en riesgo, a la luz de lo antes expuesto, la balanza podría

---

[33] Véase, e.g., Pueblo v. Dones Arroyo, 106 DPR 303, 314 (1977), en el cual el Tribunal de Primera Instancia evaluó en cámara la prueba solicitada antes de hacer su determinación. Luego de tener los elementos necesarios denegó que la prueba fuera descubierta. Cuando el caso llegó ante nuestra consideración confirmamos el dictamen recurrido.

[34] Chiesa Aponte, op. cit., pág. 343 ("**La inspección en cámara por el juez es un mecanismo efectivo para el juez determinar si debe imponer restricciones al descubrimiento**". (Énfasis suplido).). Pennsylvania v. Ritchie, *supra*, pág. 60. Véanse además: Soto v. Srio. de Justicia, 112 DPR 477 (1982).

inclinarse a no ordenar la entrega de la pieza evidenciaria mencionada, salvo las circunstancias del caso lo hicieran necesario.

Ciertamente hay instancias en que el examen de la prueba en cámara no es necesario o indispensable.[35] Sin embargo, este no es el escenario. Se trata de videos que, según alegó el Ministerio Público, la entrega podía afectar las labores investigativas del Estado en la lucha contra la criminalidad y poner en peligro la vida y la seguridad de sus funcionarios.[36] Esto, porque muestran transacciones de sustancias controladas entre el agente encubierto y el recurrido. Por su parte, el señor Sanders Cordero adujo que la entrega de los videos es necesaria para preparar su defensa y que contienen prueba exculpatoria. En específico, afirmó que la entrega de éstos era indispensable para ejercer su derecho a contrainterrogar a los testigos de cargo y que pueden haber sido adulterados. La situación que presenta el caso y los fundamentos expuestos por el Estado y el recurrido requerían un examen minucioso de los videos antes de tomar alguna determinación. Lo anterior resulta contrario a lo que

---

[35] Véase Alderman v. United States, 394 US 165 (1969). Lo resuelto en Alderman v. United States, supra, no aplica al caso de autos. Nunca se alegó que la obtención de los videos infringió alguna cláusula constitucional particular y que eran inadmisibles.

[36] Distinto a lo sucedido en Pueblo v. Tribunal Superior, supra. Allí, según aclaramos, el fiscal no alegó ni ofreció prueba de que revelación de los informes solicitados por el acusado afectaría la seguridad del Estado ——ya sea por poner en peligro la integridad física y la vida de un agente encubierto en funciones—— ni las labores investigativas de sus agentes policiacos.

llevó a cabo el foro primario. El tribunal no podía emitir un dictamen prácticamente a ciegas.

Nótese que el Tribunal de Primera Instancia, a pesar de que en la resolución recurrida reconoció que estaba llamado a hacer una evaluación sabia y cautelosa que le permitiera hacer un balance de intereses, desde el momento en que el Ministerio Fiscal le hizo saber su preocupación en cuanto a las consecuencias de acceder a la entrega de los videos, ordenó que éstos fueran entregados. Consecuentemente, fundado en que de todos modos las Reglas de Procedimiento Criminal establecían que los videos eran descubribles, y sin ponderar si la entrega constituía una forma adecuada de salvaguardar los intereses del Estado, declaró no ha lugar la solicitud de orden protectora presentada. Perdió de perspectiva el tribunal que el descubrimiento de prueba no conlleva, necesariamente, que el acusado tenga el derecho a que se le **reproduzca** y **entregue** copia de toda la prueba que solicitó, cuando existen razones de peso que impiden tal proceder. De ser meritorias las alegaciones del Ministerio Público, y así justificarlo un balance justo y adecuado, el tribunal hubiera podido limitar, restringir o condicionar el descubrimiento de prueba de la manera que procediera, tal y como permite la Regla 95B de Procedimiento Criminal, *supra*.

*En segundo lugar,* no podemos perder de perspectiva que, en gran medida, el descubrimiento de prueba lo que busca es que las partes tengan conocimiento de la evidencia que se presentará en el juicio ——y en el caso del acusado también

la que le favorezca, aunque el Ministerio Fiscal no se proponga utilizarla— para prepararse de manera adecuada. Destacamos que en este caso no hay una negación o privación real del descubrimiento de la prueba. El Estado nunca se ha negado a que la defensa tenga acceso a los videos en sus oficinas, con el fin de que puedan inspeccionarlos y analizarlos para preparar su defensa y contrainterrogar a los testigos de cargo. Esto no nos parece irrazonable, por lo que descartar de plano la alternativa propuesta por el Ministerio Público —como lo hizo el Tribunal de Primera Instancia— podría resultar inapropiado.

*Tercero,* nuestro sistema de justicia exige que la prueba que a Fiscalía concierna que se admita en el juicio contra el acusado, debe ser autenticada ante el foro judicial.[37] Esto incluye que se demuestre la cadena de custodia de la prueba en cuestión, cuando se requiera.[38] En instancias en que la defensa ha tenido oportunidad de observar la prueba, como sucede con los videos en el caso de autos, una mera alegación de que "existe la posibilidad de que el video no haya sido manejado de forma apropiada" no sería suficiente, de por sí, para ordenar su entrega.

*Por otra parte*, aunque el foro de instancia había señalado una vista de medidas cautelares, la evaluación que en su origen realizó no fue completa. Por el contrario, éste

---

[37] Véase Regla 901 de Evidencia de Puerto Rico, 32A LPRA Ap. VI.

[38] Íd., inciso (b)(11).

se limitó a ordenar la reproducción y entrega de los videos sin considerar si, en efecto, los intereses encontrados podían ser salvaguardados con este proceder. La situación se agrava, como mencionamos, cuando ni se había examinado la prueba en este caso para conocer cuál era su contenido.

Cabe aclarar que, aunque el Tribunal de Primera Instancia había ordenado medidas cautelares en el caso cuando determinó que el testimonio del agente encubierto se prestaría en el juicio a puertas cerradas, estas medidas no son aquellas que podrían ser necesarias en el descubrimiento de prueba.[39] Éstas tampoco se relacionan con las implicaciones que tendría reproducir y entregar un video en el que se muestre al principal testigo del caso, quien resulta ser un agente encubierto en funciones, y que puede divulgar las técnicas de investigación en casos similares. Es por esto que la determinación de que el juicio se celebre en privado, mientras declara el agente encubierto, no está relacionada con el efecto que pueda conllevar que el descubrimiento concedido a la defensa sea la reproducción y la entrega de los videos en controversia.[40] Se trata de dos formas distintas en que se puede divulgar la identidad del agente encubierto en funciones y afectarse otros intereses del Estado de gran envergadura. De hecho, aunque estaba señalada una vista de medidas cautelares —la cual se celebraría más de un mes

---

[39] *Moción en oposición a petición de certiorari*, pág. 12.

[40] Contrario a lo que alega el señor Sanders Cordero en su oposición a la Petición de *certiorari* ante esta Curia.

después de ordenar la entrega de la prueba— al amparo de una valoración incompleta y deficiente, el tribunal ya había declarado no ha lugar el petitorio del Ministerio Público. Ese curso decisorio inevitablemente incide sobre los intereses invocados por el Estado.

Reiteramos, el acusado y el Ministerio Fiscal no cuestionan que el agente que participó en las transacciones que muestran los videos aún se encuentra en funciones. Por esta razón, cuando no existe controversia en cuanto a la existencia de algún interés apremiante del Estado para restringir, limitar o condicionar el descubrimiento de prueba —como sucede en este caso— el tribunal debe **examinar con mayor rigor** la forma en que finalmente se concederá el descubrimiento de prueba. Así, si las circunstancias lo ameritan, la orden que emita el foro judicial no debe estar limitada a que se entregue la prueba solicitada. El dictamen debe considerar y establecer, **conjuntamente**, las medidas y condiciones que salvaguarden tanto los derechos del acusado como los intereses del Estado.[41]

Un juez que no justiprecia la totalidad de los elementos indispensables al momento de ordenar la reproducción y entrega de cierta prueba, abusa de su discreción. Sería ilógico concluir, por ejemplo, que el tribunal logró conceder la protección que resulte forzosa, y que alcanzó un balance

---

[41] No podemos ser tan ingenuos para ignorar que la evidencia puede ser compartida con terceros en cuestión de instantes.

justo y adecuado, cuando solo se limita a ordenar la entrega de cierta prueba sin antes ponderar las medidas y condiciones apropiadas que salvaguarden los intereses del Estado y los derechos del acusado.

No hay duda de que la discreción constituye un poderoso instrumento de los tribunales para hacer justicia.[42] Empero, reconocerla no se traduce en un poder absoluto para actuar de una forma u otra con abstracción de los intereses encontrados.[43] Se trata, por el contrario, de una forma de razonabilidad aplicada al discernimiento judicial para llegar a una solución justiciera para todas las partes involucradas.[44] En los casos en que ésta se ha reconocido, los tribunales deben conocer y tomar en consideración los elementos indispensables que le permitan actuar dentro de los parámetros de su facultad discrecional. Solo de esta forma el tribunal puede asegurarse de que la decisión constituye el balance que se debe alcanzar. Además, ello permite que el foro revisor considere si el juzgador tomó en cuenta, y no ignoró, los hechos materiales importantes que no podía pasar por alto y, por lo tanto, que la actuación está dentro del ejercicio de su **sana discreción**.

A pesar de que hemos propiciado un amplio descubrimiento de prueba como instrumento básico para hallar la verdad, lo

---

[42] Pueblo v. Sánchez González, 90 DPR 197, 200 (1964).

[43] Íd.

[44] Pueblo v. Rivera Santiago, 176 DPR 559, 580 (2009); Pueblo v. Ortega Santiago, 125 DPR 203, 211 (1990); Pueblo v. Custodio Colón, *supra*, pág. 588; Pueblo v. Sánchez González, *supra*, pág. 200.

anterior no es carta blanca que requiera que éste se realice de la forma en que una de las partes pretende, porque le resulta más fácil y conveniente.[45] En este contexto, los tribunales deben realizar una evaluación de los intereses encontrados y hacer una determinación sobre la forma de descubrir la prueba que resulte más propicia y constituya el balance justo y adecuado **al caso particular** ante su consideración. Como mencionáramos, encontrar este balance delicado requiere que el tribunal tome en consideración los hechos del caso y la totalidad de las circunstancias envueltas en el tipo de prueba solicitada.[46]

El análisis enunciado constituye la mejor salvaguarda, tanto para los derechos del acusado como los intereses del Estado. Ello se debe a que comprende un examen riguroso y completo por el tribunal de las circunstancias que rodean la solicitud de ambas partes.

El juez, en todo caso, luego de conocer los elementos imprescindibles para emitir su dictamen y tomarlos en consideración, de entender que en el caso procedía de todos modos la entrega de los videos, debió establecer de forma clara, junto a su determinación, las condiciones y medidas cautelares necesarias para salvaguardar los intereses encontrados. En virtud de lo esbozado por las partes, como mínimo estas debían establecer los siguientes parámetros: la

---

[45] Pueblo v. Vega, *supra,* pág. 991. Véase además: W.J. Brennan, Discovery in Federal Criminal Cases: Remarks on Discovery, 33 FRD 47, 62-63 (1963); Pennsylvania v. Ritchie, *supra*, págs. 52-53.

[46] Pueblo v. Custodio Colón, *supra*, pág. 586.

fecha, el lugar y la hora para entregar la prueba; las personas que tendrían acceso a ella; el uso que podrían darle; el lugar y medios para custodiarla; modos para preservar la confidencialidad del contenido, si fuera necesario; y cualquier otra condición, limitación o prohibición ineludible en el caso particular. Al no hacerlo, y ordenar la entrega de los videos sin ponderar todos estos elementos que no podía pasar por alto, abusó de su discreción.

**V**

Por los fundamentos enunciados, expedimos el recurso de *certiorari* presentado por el Ministerio Público y revocamos la resolución recurrida emitida por el Tribunal de Apelaciones. Por consiguiente, dejamos sin efecto la orden de reproducir y entregar los videos en controversia y devolvemos el caso al foro de primera instancia para que evalúe el petitorio de las partes de conformidad con lo aquí resuelto.

Se dictará sentencia de conformidad.


Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

      v.

Joshua Sanders Cordero          CC-2017-0867

    Recurrido

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de febrero de 2018.

Por los fundamentos expuestos en la Opinión que antecede, los cuales se hacen formar de la presente sentencia, expedimos el recurso de *certiorari* presentado por el Ministerio Público y revocamos la resolución recurrida emitada por el Tribunal de Apelaciones. Por consiguiente, dejamos sin efecto la orden de reproducir y entregar los videos en controversia y devolvemos el caso al Tribunal de Primera Instancia para que evalúe el petitorio de las partes de conformidad con lo aquí resuelto.

Lo pronunció y manda el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Colón Pérez emitió una Opinión de Conformidad. La Juez Asociada señora Rodríguez Rodríguez no intervino.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

     Peticionario

                      Núm. CC-2017-867

       v.

Joshua Sanders Cordero

     Recurrido

Opinión de Conformidad emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 23 de febrero de 2018.

Estoy conforme con el resultado al que llega una mayoría de este Tribunal en el día de hoy, toda vez que el mismo deja meridianamente claro que, en casos como el de autos -- y ante el escenario de un potencial peligro a la integridad física y a la vida de un agente encubierto que, en funciones, realiza determinada investigación criminal -- el Tribunal de Primera Instancia tiene la obligación principalísima de adoptar todas aquellas medidas que entienda necesarias para proteger la identidad del referido agente del orden público <u>en un momento que resulte propicio</u> y no en una etapa que pudiese resultar académica.

Ello incluye, para el juez que suscribe, la posibilidad de que un Tribunal -- luego de aquilatar los planteamientos de todas las partes en el litigio -- se niegue a autorizar la entrega de cualquier pieza evidenciaria que permita que la identidad de un agente del orden público que haya realizado cierta investigación quede al descubierto. Los referidos funcionarios del orden público que, día a día, arriesgan su integridad física y su vida, para ayudar a contrarrestar la creciente ola criminal que nos afecta como país, deben saber que -- en el ejercicio de sus funciones y en escenarios donde no se menoscaben los derechos constitucionales que le cobijan a toda persona acusada de delito -- siempre estarán protegidos.


                                        Angel Colón Pérez
                                        Juez Asociado